JODI LINKER, Bar No. 230273
Federal Public Defender
Northern District of California
TAYLOR FATHERREE, Bar No. 358709
STEVEN J. KOENINGER, Bar No. 211757
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Taylor_Fatherree@fd.org

Counsel for Roderick Bolds

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RODERICK BOLDS,<br><br>Defendant. | **Case No.:** CR 25–394 CRB<br><br>**MOTION TO DISMISS INDICTMENT FOR VINDICTIVE PROSECUTION**<br><br>**Court:** **Hon. Charles R. Breyer**<br>Courtroom 6, 17th Floor |

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 5

I. The indictment in this case was filed to penalize Mr. Bolds for exercising his right to seek release, and therefore constitutes vindictive prosecution. ..... 5

A. Because the circumstances surrounding the November 13, 2025 indictment demonstrate a reasonable likelihood of vindictive prosecutorial conduct, Mr. Bolds is entitled to a presumption of vindictiveness. ..... 6

1. The timing of the indictment weighs in favor of a finding of vindictiveness. ..... 7

2. The indictment was based on the exact same conduct alleged in the original Form 12, a fact which also compellingly demonstrates vindictiveness. ..... 8

3. The government's continuous involvement in the case weighs in favor of a finding of vindictiveness. ..... 9

4. The government has long had more than sufficient evidence to obtain an indictment against Mr. Bolds, but did not do so until he exercised his right to seek bail. ..... 10

II. The government must prove its indictment was not vindictively motivated or the Court must dismiss it. ..... 11

III. The Court should order discovery based on Mr. Bolds' prima facie showing of vindictiveness. ..... 12

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

### Federal Cases

*Adamson v. Ricketts*,
865 F.2d 1011 (9th Cir. 1988) ........ *passim*

*Bordenkircher v. Hayes*,
464 U.S. 357 (1978) ........ 6

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989) ........ 12

*United States v. Allen*,
699 F.2d 453 (9th Cir. 1982) ........ 9

*United States v. Ballester*,
763 F.2d 368 (9th Cir. 1985) ........ 9-10

*United States v. Gallegos-Curiel*,
681 F.2d 1164 (9th Cir. 1982) ........ 7

*United States v. Gamez-Orduño*,
235 F.3d 453 (9th Cir. 2000) ........ 5, 6-7

*United States v. Garza-Juarez*,
992 F.2d 896 (9th Cir. 1993) ........ 9, 11

*United States v. Goodwin*,
457 U.S. 368 (1982) ........ 6, 11

*United States v. Griffin*,
617 F.2d 1342 (9th Cir. 1980) ........ 7, 8

*United States v. Groves*,
571 F.2d 450 (9th Cir. 1978) ........ 8, 10, 11

*United States v. Hooton*,
662 F.2d 628 (9th Cir. 1981) ........ 5

*United States v. Jenkins*,
504 F.3d 694 (9th Cir. 2007) ........ *passim*

*United States v. Kent*,
649 F.3d 906 (9th Cir. 2011) ........ 5, 6, 7

*United States v. Martinez*,
785 F.2d 663 (9th Cir. 1986) ........ 9

*United States v. Montoya*,
45 F.3d 1286 (9th Cir. 1995) ........ 5, 6

*United States v. Motley*,
635 F.2d 186 (9th Cir. 1981) ..... 11

*United States v. One 1985 Mercedes*,
917 F.2d 415 (9th Cir. 1990) ..... 12

*United States v. Robison*,
644 F.2d 1270 (9th Cir. 1981) ..... 9

*United States v. Ruesga-Martinez*
534 F.2d 1367 (9th Cir. 1976) ..... 11

**Federal Statutes**

18 U.S.C. § 922 ..... *passim*

18 U.S.C. § 3583 ..... 1, 5

**State Statutes**

California Penal Code § 29800 ..... 2

California Penal Code § 29900 ..... 2

## INTRODUCTION

On November 13, 2025, the government filed a one-count indictment charging Roderick Bolds with firearm possession in violation of 18 U.S.C. § 922(g)(1). *See United States v. Bolds*, CR 25-00349, Dkt. No. 1. The indictment alleged that Mr. Bolds possessed a .357 magnum pistol on January 16, 2025—ten months earlier. Notably, in January 2025, Mr. Bolds was on supervised release for his prior conviction in this Court (case number CR 11-00697 CRB), and the allegation that he unlawfully possessed a firearm also served as the basis for a Form 12 petition, filed January 16, 2025, alleging a violation of the terms of his supervision. *See United States v. Bolds*, CR 11-00697, Dkt. No. 233.[1]

During the ensuing months, including multiple federal court appearances related to the alleged supervised release violations, the government never once indicated any intention to indict Mr. Bolds for allegedly possessing a firearm in January 2025—that is, until Bolds exercised his right to seek release on November 4, 2025, and the magistrate judge indicated she would likely grant that request. Moments later, the government stated, for the first time, that it would indict Mr. Bolds for the nearly one-year-old firearm allegation. The government followed through on its promise shortly thereafter, and by doing so, it increased Mr. Bolds' sentencing exposure by fifteen years. *Compare* 18 U.S.C. § 3583(e)(3) (authorizing up to five years in custody for a supervised-release violation) *with* 18 U.S.C. § 922(g)(1) (providing for a custodial sentence of up to fifteen years).

Because the circumstances surrounding the indictment in this case strongly demonstrate impermissible prosecutorial vindictiveness—*i.e.*, that the indictment was filed to penalize Mr. Bolds for exercising his right to seek release during the Form 12 proceedings—Mr. Bolds' due process rights were violated and the Court must dismiss the indictment with prejudice. Indeed, it is unconstitutional for a prosecutor to enhance charges due to a defendant's exercise of a statutory or constitutional right, and the indictment in this case, based on the exact same conduct charged months earlier in a Form 12, bears the hallmarks of such unlawful prosecutorial vindictiveness. While dismissal is appropriate, at a minimum, this Court should (1) find that Mr. Bolds has established a presumption of vindictiveness that the government must rebut to avoid dismissal and (2) order the

---

[1] Unless otherwise noted, docket citations in this motion refer to the docket in case number CR 11-00697.

government to produce discovery related to its charging decision.

## BACKGROUND

On January 16, 2025, Mr. Bolds was arrested for alleged violations of California Penal Code §§ 29800(a)(1) (felon in possession of a firearm), 29900(a)(1) (possession of firearm after certain convictions), 30305(A)(1) (felon in possession of ammunition, and 422 (willful threats). Dkt. No. 233. That same day, U.S. Probation filed a petition for warrant for person under supervision ("Form 12") that listed all of these charges.[2] *Id*. The federal warrant was granted. *Id.* Although Mr. Bolds was formally charged in state court with felon in possession of a firearm, felon in possession of ammunition, and brandishing, all of those charges were subsequently dismissed on April 18, 2025.

Thereafter, Mr. Bolds was taken into federal custody on the federal warrant. He made his first appearance on the Form 12 before Magistrate Judge Lisa Cisneros on April 23, 2025. *Id*. at 237; Declaration of Taylor Fatherree in Support of Motion to Dismiss ("Fatherree Decl."), Exhibit A (4/23/25 audio recording). During the initial appearance, the government moved to detain Mr. Bolds, arguing he was a danger to the community. *See* Ex. A at 5:16. After hearing from the defense, the magistrate court ordered Mr. Bolds released over the government's objection. *Id*. at 37:59. At no point during the April 23 hearing did the government state or otherwise indicate that it intended to indict Mr. Bolds for allegedly possessing a firearm on January 16. *See* Ex. A. Nor did the government do so before or after the hearing. *See* Declaration of Jodi Linker in Support of Motion to Dismiss ("Linker Decl.") ¶ 6.

On May 6, 2025, a hearing was held before the magistrate court after Mr. Bolds had a positive drug test. *See* Dkt. No. 240; Fatherree Decl., Exhibit B (5/6/2025 audio recording). The government argued again that Mr. Bolds was a danger to the community, but the magistrate judge declined to reconsider her previous decision on release. *See* Ex. B at 10:38-13:10. At no point during the May 6 hearing did the government state or otherwise indicate that it intended to indict Mr. Bolds for allegedly possessing a firearm on January 16. *See* Ex. B. Nor did the government do so before or after the hearing. *See* Linker Decl. ¶ 6.

---

[2] Mr. Bolds began supervised release on April 15, 2022. Previous Form 12 allegations were resolved via judicial notice. *See* Dkt. Nos. 196, 198, 231.

On May 28, 2025, the magistrate court held another status hearing regarding Mr. Bolds' performance on supervised release. Dkt. No. 242. After a positive update, the court continued Mr. Bolds' release conditions. *See id.*; Fatherree Decl., Exhibit G (5/28/25 audio recording). Mr. Bolds appeared before this Court later the same day. Dkt. No. 243; Fatherree Decl., Exhibit H (transcript of proceeding). After a brief hearing, this Court set another status hearing for August 6, 2025. *Id*. During the May 28 magistrate and district court hearings, the government did not state or otherwise indicate that it intended to indict Mr. Bolds for allegedly possessing a firearm on January 16. *See* Exs. G, H. Nor did the government do so before or after the hearings. *See* Linker Decl. ¶ 6; Fatherree Decl. ¶ 5.

On June 25, 2025, this Court granted a petition for summons after probation filed an amended Form 12 alleging several technical violations and a misdemeanor weapon possession allegation that was never charged in state court. Dkt. No. 246. On July 1, 2025, in response to the Form 12, this Court ordered a modification of conditions for Mr. Bolds, directing him to reside at the halfway house for up to 90 days. *Id*. at 249. The government did not state or otherwise indicate that it intended to indict Mr. Bolds for allegedly possessing a firearm on January 16 after either the June 25 petition or the July 1 order. *See* Linker Decl. ¶ 6; Fatherree Decl. ¶ 5.

On July 7, Mr. Bolds appeared before Magistrate Judge Peter Kang and was advised of the June 25 charges. Dkt. No. 251. The government did not state or otherwise indicate an intention to indict Mr. Bolds for the alleged January 16 conduct at that hearing; nor did it do so before or after. *See* Linker Decl. ¶ 6; Fatherree Decl. ¶ 5.

On July 28, 2025, a second amended petition for summons was granted after Mr. Bolds was terminated from the halfway house for testing positive for alcohol. Dkt. No. 254. On August 6, 2025, Mr. Bolds appeared before this Court for the previously scheduled status hearing. Fatherree Decl., Exhibit F (transcript of hearing). During that hearing, Mr. Bolds was advised of the new charges. *Id*. Although government counsel recognized that the Court was not inclined to revisit the question of Mr. Bolds continued release because it already had issued a summons for the new Form 12 charges, he told the Court he was "very concern[ed]" about Mr. Bolds' alleged conduct. Ex. F at 4. During the July 28 hearing, the government did not state or otherwise indicate that it intended to indict Mr. Bolds for allegedly possessing a firearm on January 16. *See* Ex. F. Nor did it do so before or after the

hearing. *See* Linker Decl. ¶ 6; Fatherree Decl. ¶ 5.

Finally, this Court granted another petition for warrant for person under supervision on October 22, 2025. Dkt. No. 259. The newly amended Form 12 alleged, among other things, that on October 20, 2025, Mr. Bolds had negligently discharged a firearm—an allegation that did not even result in state court charges. *Id*. On October 24, after Mr. Bolds was arrested on that warrant, he made his initial appearance before the magistrate court. *Id*. at 263; Fatherree Decl., Exhibit I (10/24/25 audio recording). The government moved for detention on grounds of dangerousness. *See* Ex. I at 6:26. The defense asked for video discovery on the new allegations and indicated it would like to gather more information before a detention hearing. *Id*. at 6:58-7:50. At no point during the hearing did the government indicate it was contemplating an indictment. *See id*. Nor did it do so before or after the hearing. *See* Linker Decl. ¶ 6; Fatherree Decl. ¶ 5.

Nearly one-and-one-half weeks later, on the morning of November 4, 2025, Mr. Bolds appeared in magistrate court for a detention hearing. Dkt. No. 269; Fatherree Decl., Exhibit C (11/4/2025 audio recording). The government strongly opposed release, arguing that Mr. Bolds posed a danger to the community and the only option was custody. Ex. C at 9:27-14:50; 15:53-17:45. The defense pointed out numerous reasons to doubt the government's allegation that Mr. Bolds had negligently discharged a firearm and argued he should be released on bail. *Id*. at 1:03-9:00. After hearing from both parties, the magistrate court indicated an interest in releasing Mr. Bolds to the halfway house if space was available. *See* Ex. C at 44:03-47:15. The court continued the hearing until later that same day and directed the probation officer to check on available space at the halfway house. *Id*. at 49:03-49:45.

After the conclusion of the morning detention hearing, the government indicated for the first time, while standing in the well of the courtroom, that it would be indicting Mr. Bolds. Linker Decl. ¶ 4. When the parties returned to magistrate court that afternoon, the magistrate judge ordered Mr. Bolds' release to the halfway house as she indicated she would. Dkt. No. 269; Fatherree Decl., Exhibit D (second audio recording 11/04/2025).

On November 13, 2025, the government filed the one-count indictment underlying the present case. *See United States v. Bolds*, CR 25-00394, Dkt. No. 1. As noted above, the indictment charged

Mr. Bolds with unlawfully possessing a firearm as a felon on January 16, 2025—the exact same conduct that he was accused of in the original Form 12 filed nearly ten months earlier on that same day. *See id.*; Dkt. No. 274 (order relating cases). Whereas the firearm-possession allegations in the Form 12 exposed Mr. Bolds to the possibility of up to five years in custody, *see* 18 U.S.C. § 3583(e)(3), the new § 922(g) indictment, alleging the exact same conduct, subjected Mr. Bolds to sentence of up to fifteen additional years in custody—a four-fold increase in total exposure. Between January 16, 2025 and November 4, 2025, not only did the the goverment never state or reference any intention to seek a new indictment, but the parties also engaged in no plea bargaining whatsoever in order to resolve the pending Form 12 and avoid any new indictment. *See* Linker Decl. ¶¶ 6, 7; Fatherree Decl. ¶ 5.

## ARGUMENT

### I. The indictment in this case was filed to penalize Mr. Bolds for exercising his right to seek release, and therefore constitutes vindictive prosecution.

The government violates a defendant's due process rights if it files charges "to penalize [a defendant] for exercising protected statutory or constitutional rights." *United States v. Jenkins*, 504 F.3d 694, 69 (9th Cir. 2007); *see also United States v. Hooton*, 662 F.2d 628 (9th Cir. 1981) ("[The mere filing of an indictment can support a charge of vindictive prosecution."); *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995) (recognizing same). The same is true when the government adds or "increase[s] the charges against a defendant in retaliation for the defendant's assertion of a statutory [or constitutional] right." *Adamson v. Ricketts*, 865 F.2d 1011 (9th Cir. 1988) (en banc); *see also, e.g.*, *United States v. Gamez-Orduño*, 235 F.3d 453, 462 (9th Cir. 2000) ("A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right.").

A defendant may establish a prima facie case of vindictive prosecution in either of two ways. *Jenkins*, 504 F.3d at 699; *United States v. Kent*, 649 F.3d 906, 912-13 (9th Cir. 2011). First, the defendant may produce direct evidence of a prosecutor's punitive motivation towards him. *Jenkins*, 504 F.3d at 699. Alternatively, the defendant "is entitled to a presumption of vindictiveness" when he shows that the circumstances "give rise to an appearance" that the prosecutor filed charges "because [the defendant] exercised a statutory, procedural, or constitutional right." *Id.*; *see also Adamson*, 865

F.2d at 1017 (explaining "vindictiveness will be presumed when the circumstances surrounding prosecutorial decision at issue create the appearance of vindictiveness."); *Montoya*, 45 F.3d at 1299 (a "prima face case of prosecutorial vindictiveness" may be established by "facts that warrant an appearance of such"). The mere appearance of vindictiveness is sufficient to place the burden on the government to disprove a due process violation "because the doctrine of vindictive prosecution seeks to reduce or eliminate apprehension on the part of an accused that she may be punished for exercising her rights." *Jenkins*, 504 F.3d at 700 (quotation omitted). Because the government's decision to indict Mr. Bolds for allegedly violating § 922(g)(1)—announced moments after Mr. Bolds asserted his right to seek bail and the magistrate court indicated it was granting release, and ten months after the alleged conduct—plainly gives rise to an appearance of vindictiveness the government will be unable to rebut, the Court must dismiss the present indictment.

**A. Because the circumstances surrounding the November 13, 2025 indictment demonstrate a reasonable likelihood of vindictive prosecutorial conduct, Mr. Bolds is entitled to a presumption of vindictiveness.**

To warrant a presumption of vindictiveness, the defendant "need not show that the prosecutor acted in bad faith" or "maliciously sought" the charges or indictment at issue. *Jenkins*, 504 F.3d at 699 (quotation omitted); *see also Adamson*, 865 F.2d at 1017 (recognizing same). Rather, the "presumption arises *whenever* the circumstances reflect[] the very real likelihood of actual vindictiveness on the part of the prosecution.'" *Adamson*, 865 F.2d at 1018 (cleaned up) (emphasis added). Although vindictive-prosecution claims are evaluated somewhat differently when the charges at issue are brought pretrial rather than after—*i.e.* a presumption of vindictiveness is not triggered in the pretrial setting by timing alone ("simply from the fact a more severe charge followed on, or even resulted from, the defendant's exercise of a right")[3]—the Due Process Clause nevertheless prohibits vindictive prosecution at any stage of a criminal proceeding. *See, e.g.*, *Gamez-Orduño*, 235 F.3d at

---

[3] The Supreme Court and Ninth Circuit have recognized that a prosecutor's pretrial charging decisions are generally entitled to deference, due in part to the prevalence of plea bargaining in our criminal justice system and the Supreme Court's sanctioning of that process, and the often ongoing nature of investigations. *See United States v. Goodwin*, 457 U.S. 368, 378-80 (1982) (discussing *Bordenkircher v. Hayes*, 464 U.S. 357 (1978) and noting, *inter alia*, "charging decision[s] that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness"); *Kent*, 649 F.3d at 913-14.

462 (vindictive prosecution "violates due process in the pretrial setting as it does at other stages"). Therefore, even though a prosecutor has "great discretion" to choose which charges they will bring, "the vindictive prosecution doctrine is 'a limit on prosecutorial discretion"; upon a sufficient showing "that such discretion may have been exercised with a vindictive motive or purpose, the reasons for the prosecutor's decision to increase the stakes for those accused must be made to appear." *Adamson*, 865 F.2d at 1019 (cleaned up). Accordingly, a defendant is entitled to presumption of vindictiveness whenever they demonstrate "a *reasonable likelihood* that the government would not have brought the [subject] charges" had he not exercised his rights. *Jenkins*, 504 F.3d at 700 (emphasis in original).[4] *See also United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982) ("[T]he appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he exercised his specific legal rights.").

At a minimum, Mr. Bolds has shown a reasonable likelihood of vindictiveness here. Not only did the government disclose its intention to indict immediately after it became clear that Mr. Bolds' bail application was likely to be successful, *see* Linker Decl. ¶¶ 3, 4, but the indictment also was based on precisely the same conduct alleged ten months earlier in a Form 12 filed in district court. Moreover, despite being well-aware of the conduct underlying the present indictment for months beforehand, and despite having more than enough evidence to seek a § 922(g)(1) indictment during that time, the government never so much as mentioned an intention to seek an indictment until moments after Mr. Bolds exercised his right to seek bail and his release appeared imminent. Under Ninth Circuit precedent, these circumstances warrant a presumption of vindictiveness because they give rise to *at least* "an appearance" that the indictment was vindictively filed to penalize Mr. Bolds' exercise of his right to ask for bail. *Kent*, 649 F.3d at 912-13.

**1. The timing of the indictment weighs in favor of a finding of vindictiveness.**

It is well-established that the timing or chronology of a prosecutor's decision to file increased

---

[4] Courts look to the totality of the circumstances surrounding the prosecutorial decision at issue when evaluating whether the facts give rise to an appearance of vindictiveness. *United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir. 1980).

charges—e.g., when the increased charges follow after the defendant's assertion of a constitutional or statutory right—may constitute strong evidence that the charges were brought in retaliation for the assertion of that right. *See Adamson*, 865 F.2d at 1018 ("Most importantly, the decision to file the increased charges directly followed Adamson's assertion of his constitutional right against self-incrimination."); *Jenkins*, 504 F.3d at 699 (affirming dismissal of indictment where government brought new charges during jury deliberation at trial where defendant exercised right to testify in her defense); *Griffin*, 617 F.2d at 1347 (explaining "the chronology of events is, of course, entitled to great weight" in the vindictiveness inquiry); *United States v. Groves*, 571 F.2d 450, 454 (9th Cir. 1978). ("This coincidence of events presents overwhelming circumstantial evidence that the indictment was returned and filed in retaliation for appellant's suggestion that the Speedy Trial Act barred prosecution[.]").

The timing of the indictment in this case is strong circumstantial evidence of prosecutorial vindictiveness. The government, having never once mentioned the prospect of charging Mr. Bolds for the January 16 incident, declared its decision to do so *immediately after his bail application and the appearance of its likely success*. *See* Linker Decl. ¶¶ 3, 4. Indeed, the indictment itself was not secured until nine days after Mr. Bolds' successful bail request, notwithstanding the fact that it could have been sought for many months prior. Instead, apparently frustrated that Mr. Bolds was poised to be released over its strong objection, the government decided to increase the severity of the charges against him. The Court should weigh the timing of the new charges heavily, especially given the lengthy period of time in which the government was aware of the alleged conduct, yet displayed a complete lack of interest in charging it until Mr. Bolds' most recent successful bail application.

**2. The indictment was based on the exact same conduct alleged in the original Form 12, a fact which also compellingly demonstrates vindictiveness.**

Beyond the timing of the government's decision "to up the ante for the defendant," *Adamson*, 865 F.2d at 1018 (quotation omitted), the Ninth Circuit has identified multiple other circumstances that support a showing of prosecutorial vindictiveness. The likelihood of unconstitutional vindictiveness is increased, for example, where the charges newly added by the prosecutor (after the defendant's assertion of rights) are based on the same set of facts as the original charge. *See*

*Adamson*, 865 F.2d at 1018 (holding petitioner established an appearance of vindictiveness where, *inter alia*, the state sought an enhanced penalty "for the very same conduct" it previously had not); *id*. (noting the "same set of facts were involved in both decisions"); *United States v. Martinez*, 785 F.2d 663, 669 (9th Cir. 1986) (stating "a presumption of vindictiveness is raised" when the additional charge arises from the "same nucleus of operative facts"); *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981) (recognizing that in cases condemning prosecutions as vindictive, the more serious or additional charge often "arise[s] out of the same nucleus of operative facts as the original charge"). *Compare*, *e.g.*, *United States v. Allen*, 699 F.2d 453, 460 (9th Cir. 1982) (holding no presumption arose where prosecutor filed charges after defendant's sentencing in an "unrelated prosecution").

There is no question the present indictment is based on the exact same factual allegations underlying the original Form 12 filed on January 16, 2025. *Compare United States v. Bolds*, CR 25-00394, Dkt. No. 1 (count one) *with* Dkt. No. 233 (charges one and two); *see also* Ex. E at 3:17-21 (Mr. Barry informing the Court that the newly indicted felon in possession charge is the same as one of the pending supervised release violation charges). As in *Adamson*, the government now seeks a harsher potential punishment for the same alleged conduct it previously concluded was sufficiently addressed with a lesser potential punishment. 865 F.2d at 1018. And as in *Adamson*, such conduct creates a strong appearance of impermissible vindictiveness. *See id*. at 1018-1019.

**3. The government's continuous involvement in the case weighs in favor of a finding of vindictiveness.**

The likelihood of prosecutorial vindictiveness is increased not only when a defendant faces enhanced charges based on the same conduct as originally charged, but also when the "same sovereign" is "involved in both" the original charge and the added charge. *Adamson*, 865 F.2d at 1018; *see also Garza-Juarez*, 992 F.2d at 907 (recognizing a presumption of vindictiveness applies when "additional charges are based on the same conduct that was the subject of the first indictment, when the same sovereign was involved, and, most importantly, when the decision to file increased charges directly followed the assertion of a procedural right"). *Compare United States v. Ballester*, 763 F.2d 368, 370 (9th Cir. 1985) ("The role of a separate sovereign in bringing the increased

charges minimizes the likelihood of prosecutorial abuse.”).

The same sovereign is involved in both the original and newly added charges here. Ever since Mr. Bolds was first brought into federal custody for his initial appearance on the January 16 Form 12, the government has been prosecuting the Form 12 allegations against him. Indeed, the same government counsel moved for detention originally in April 2025; the same government counsel produced discovery to the defense related to the January 2025 allegation; the same government counsel announced his intent to indict Mr. Bolds after unsuccessfully moving for detention in October 2025; and the same government counsel signed the § 922(g)(1) indictment underlying this case. *See United States v. Bolds*, CR 25-00349, Dkt. No. 1 at 3. This is not a case where the defendant exercised a right successfully in an unrelated state prosecution, for example, and the federal government subsequently decided to bring its own charges. Rather, the same players decided to “up the ante” and Mr. Bolds’ sentencing exposure directly after he exercised his right to seek bail, *Adamson*, 865 F.2d at 1018, another fact showing unconstitutional vindictiveness in this case.

**4. The government has long had more than sufficient evidence to obtain an indictment against Mr. Bolds, but did not do so until he exercised his right to seek bail.**

In addition to the foregoing circumstances, where a prosecutor had “more than enough evidence to proceed” with the newly added charge well before the defendant’s assertion of his rights (e.g., further investigation was unnecessary) but instead delays for months or longer, this too supports a reasonable likelihood of vindictiveness and gives rise to the appearance of such. *Jenkins*, 504 F.3d at 698-700; *see id.* (holding a presumption of vindictiveness was triggered where the government “had enough [evidence] to go forward” with the later-added charges four-to-seven months earlier, but brought them only after the defendant exercised her right to testify); *Groves*, 571 F.2d at 453 (holding circumstances gave rise to appearance of vindictiveness where, *inter alia*, the prosecutor had “full knowledge of the appellant’s violation of the marihuana laws” in January 1976, but “did not see fit to seek the indictment” until October 1976, after he “asserted his statutory rights”).

Here, the government had—for months—more than enough evidence to indict Mr. Bolds for firearm possession on January 16, 2025, but chose not to do so until after he asserted his right to bail in November 2025. First, the government has been in possesion of a police incident report

documenting the January 16 allegation since April 23 at the very latest. Second, the government made its last discovery production to the defense, which included body-worn-camera footage, on May 28, 2025. Linker Decl. ¶ 8. And the defense has not received any new discovery in this case since that May 28, 2025 production. *Id*. The government had all the information necessary to proceed with an indictment for months and months before it did so. *See* Ex. E at 10:23-24 (Mr. Barry telling the Court after the indictment that "discovery ha[d] been produced long ago."). This is not a situation where the government was continuing its investigation in deciding whether to charge or continuing to evaluate the strength of the case. Rather, the government has had the same evidence all along and clearly chose not to pursue an indictment until after Mr. Bold's exercised a statutory right. This, too, gives rise to an appearance of impermissible vindictiveness in this case.

## II. The government must prove its indictment was not vindictively motivated or the Court must dismiss it.

Once, as here, a defendant's showing raises a presumption of vindictiveness, the "prosecution bears a heavy burden of proving any increase in the severity of the alleged charges was not motivated by a vindictive motive," *United States v. Ruesga-Martinez* 534 F.2d 1367, 1369 (9th Cir. 1976), and it must do so via "objective evidence justifying [its] action." *Jenkins*, 504 F.3d at 701 (quoting *Goodwin*, 457 U.S. 367, 376 n.8 (1982)). Stated otherwise, the government must demonstrate that "any increase in the severity of the charges did not stem from a vindictive motive or were justified by independent reasons or intervening circumstances that sufficiently dispel the appearance of vindictiveness." *Jenkins*, 504 F.3d at 701 (cleaned up); *see also United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993) (recognizing same). Where the presumption of vindictiveness is not sufficiently rebutted, the district court must dismiss the charges. *See*, *e.g.*, *Jenkins*, 504 F.3d at 702; *United States v. Motley*, 635 F.2d 186, 189-90 (9th Cir. 1981); *Groves*, 571 F.2d at 453-55. As Mr. Bolds has made a prima facie showing of vindictive prosecution here, the Court must order the government to respond to this motion and attempt to justify its conduct. But Mr. Bolds submits the government will be unable to carry its "heavy burden" to do so here. *Ruesga-Martinez* 534 F.2d at 1369.

**III. The Court should order discovery based on Mr. Bolds' prima facie showing of vindictiveness.**

In addition to ordering the government to respond to the present motion, the Court should further order discovery related to the government's decision to indict Mr. Bolds for firearm possession on January 16, 2025. The Ninth Circuit has recognized that in a vindictive prosecution claim "a criminal defendant may be entitled to discovery if he or she establishes a prima facie showing of a likelihood of vindictiveness by some evidence tending to show the essential elements of the defense." *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th Cir. 1990) (citing *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989)). For the reasons stated above, Mr. Bolds has made a prima facie showing of vindictiveness, and the Court should order the government to produce discovery related to its charging decision.

## CONCLUSION

For the foregoing reasons, Mr. Bolds respectfully requests that the Court order the government to respond to this motion and produce discovery related thereto.

Dated: February 10, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S

TAYLOR FATHERREE
Assistant Federal Public Defender